UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN SENSABAUGH,

            Petitioner,

    v.

WARDEN CAMPBELL,

            Respondent.

Case No.  1:22-cv-01371-KES-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND DECLINE TO ISSUE CERTIFICATE OF APPEALABILITY[1]

FOURTEEN-DAY OBJECTION PERIOD

## I.  STATUS

Petitioner Steven Sensabaugh ("Petitioner" or "Sensabaugh"), a state prisoner, is proceeding pro se on his Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2254 on October 25, 2022.  (Doc. 1, "Petition").[2]  The Petition challenges Petitioner's conviction arising from his no contest plea to three counts of violating California Penal Code section 261(a)(2), Forcible Rape, Child Victim Under 14 Years, for which the Fresno Superior Court sentenced Petitioner to an agreed upon determinate prison term of 35 years (Case No. F17900851).  (*Id.* at 3).[3]

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

[2] The Court granted Petitioner's motion to amend the Petition to name the proper respondent.  (Docs. 6,7).

[3] All document and page numbers are to the respective pleadings' document number and page number as reflected on the Court's Case Management and Electronic Filing System (CM/ECF).

Petitioner raised the following as Ground 1 in his Petition: The trial court proceeded without an ASL interpreter present for the hearing impaired defendant. (Doc. 1 at 3). Under Ground 2, Petitioner cites to *Ali v. City of Newark*, 2019 U.S. Dist. Lexis 49102.[4] (*Id*. at 4). In support of Ground 2, Petitioner cites to The American With Disabilities Act, Section 504 of Rehabilitation Act, and the Fourteenth, Eighth and Fifth Amendments. (*Id*.). Respondent filed an Answer (Doc. 13) and lodged the state court record in support (Doc. 12, 12-1). Petitioner elected not to file a traverse. This matter is deemed submitted on the record before the Court. After careful review of the record and applicable law, the undersigned recommends the district court deny Petitioner relief on his Petition and decline to issue a certificate of appealability.

## II.    GOVERNING LEGAL PRINCIPLES

### A.  Evidentiary Hearing

In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* Here, the state courts adjudicated Petitioner's claims for relief on the merits. This Court finds that the pertinent facts of this case are fully developed in the record before the Court; thus, no evidentiary hearing is required. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

### B.  ADEPA General Principles

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on

---

[4] *Ali v. City of Newark*, No. CV 15-8374 (JLL), 2019 WL 1326888 (D.N.J. Mar. 25, 2019).

the merits, then AEDPA mandates a deferential, rather than *de novo*, review. *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016). This deferential standard, set forth in § 2254(d), permits relief on a claim adjudicated on the merits, but only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and intentionally difficult to satisfy. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision. *White*, 572 U.S. at 419. Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407, (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The petitioner must show that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

When reviewing a claim under § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  As the Supreme Court explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht's* actual-prejudice requirement.  *Brown v. Davenport*, 596 U.S. 118, 134 (2022).  In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies.  *See id.* at 138 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies.") (*citing Fry v. Pliler*, 551 U.S. 112, 121 (2007)).  In short, a "federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA.  But to grant relief, a court must find that the petition has cleared both tests."  *Id*. at 134.

As discussed *supra*, for the deferential § 2254(d) standard to apply there must have been an "adjudication on the merits" in state court.  An adjudication on the merits does not require that there be an opinion from the state court explaining the state court's reasoning.  *Richter*, 562 U.S. at 98.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id*. at 99.  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Id*. at 99-100.  This presumption applies whether the state court fails to discuss all the claims or discusses some claims but not others.  *Johnson v. Williams*, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision to apply the deferential standard.  When

the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.  But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do." *Id*. at 1196.

### III.    PROCEDURAL BACKGROUND

On November 26, 2019, Sensabaugh entered a no contest plea in open court to counts 3, 12, and 18 of an amended criminal complaint, each charging him with a violation of California Penal Code section 261(a)(2), Forcible Rape, Child Victim Under 14 Years. (Doc. 12-1 at 105-118).  On April 25, 2020, prior to sentencing, Sensabaugh moved to withdraw his guilty plea pursuant to Penal Code 1018.  (Doc. 12-1 at 91-94).  On June 2, 2020, the trial court held a hearing to consider Sensabaugh's motion, took evidence, and denied it.  (Doc. 12-1 at 279-309).

After his sentencing, Petitioner filed a direct appeal raising one issue: The Trial Court Abused Its Discretion When it Failed to Find Good Cause for Mr. Sensabaugh to Withdraw his No Contest Plea to Sex Charges.  (Doc. 12-1 at 335-349).  The Fifth Appellate District Court affirmed Sensabaugh's judgment finding the trial court did not abuse its discretion.  (Case No. F081353).  (Doc. 12-1 at 379-389).  On August 11, 2021, the California Supreme Court summarily denied Sensabaugh's state petition for review.  (Case No. S269681).  (Doc. 12-1 at 420).

### IV.    RELEVANT FACTUAL BACKGROUND

Upon an independent review of the record, the Court adopts the pertinent facts of the underlying offenses as summarized by the Fifth District.  A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

**The Underlying Offenses**

Between June 2016 and February 2017, Defendant repeatedly raped and sexually assaulted 11-year-old Jane Doe. Defendant was a close friend of Doe's mother and Doe believed him to be her father. Doe became pregnant in January or February 2017. On February 8, 2017, Doe told her mother that she believed defendant was the father. On the same date, Doe and her mother reported the abuse to the police.

On February 17, 2017, Doe had an abortion. A sample of the fetal tissue and Doe's DNA were sent to the California Department of Justice for testing. The tests showed defendant was not Doe's father, however, the fetal tissue positively matched defendant's DNA.

**The Change of Plea Form and Hearing**

Defendant signed a change of plea form. That form calculated defendant's stipulated term of imprisonment to include 13 years on count 3, 13 years on count 12, and 9 years on count 18, for a total of 35 years' imprisonment.

At the change of plea hearing, before defendant entered his no contest pleas, the trial court and defendant engaged in the following colloquy:

THE COURT: So reviewing the change of plea form just handed to me, [defendant], I understand you'll be entering a plea. Of the 21 charges alleged, you'll be entering a plea to the following three charges, Count Three …[,] Count Twelve …[, and] Count Eighteen … for a total of 35 years at CDC. [¶] … [¶]

Now, I would have the option, if I find that that information establishes the plea is not appropriate, either it's too great or it's too small—I'd have the option to what's called set aside the plea. But, … if the information provided to the court is consistent with what the attorneys have provided, then I also have the option of accepting the stipulation and sentencing you to the 35 years. Do you understand that?

DEFENDANT: Yes.

THE COURT: Have you had enough time to discuss this matter with your attorney, Mr. Roth?

DEFENDANT: Yes.

THE COURT: And when you did that, did you read and review and understand and then sign and initial this tan change of plea form?

DEFENDANT: Yes.

THE COURT: All right. Sir, I'm going to take you through that form. If you have any questions for me as we go through the change of plea hearing, if you are confused by anything, if you think you need additional time with your attorney or have questions of your attorney or of the court, you just let me know. Okay?

DEFENDANT: Okay. [¶] … [¶]

THE COURT: [Defendant], as a result of this plea, to the charges indicated you could receive a maximum sentence of up to 39 years in state prison. [¶] … [A]ll charges are violent strikes. Do you understand all of that?

(Whereupon the defendant speaks to his/her attorney off the record.)

THE COURT: Do you understand that?

DEFENDANT: Yeah.

THE COURT: I notice you paused and spoke to your attorney. I don't know need to know what you spoke about, but I just want to make sure you don't have any further questions of the court?

DEFENDANT: No. I was just asking about the—just the strike thing. That's all. [¶] … [¶]

THE COURT: Sir, besides what we have discussed today, has anyone made any other promises or threats to you to get you to enter into this plea?

THE DEFENDANT: No.

**The Motion to Withdraw Plea**

In support of his motion to withdraw his plea, defendant submitted a declaration that read, in relevant part, as follows:

> When I was in court in Nov[ember] 2019[,] I was told that it would be preliminary hearing …. I also told [my attorney] plenty of time[s] I would like a[] sign language interp[re]ter so I could understand what's going on in court. [My attorney] told me it was life I was looking at and it was best for me to sign a deal which I didn't agree to. Without my interp[re]ter I had no understanding what was going on inside court. I also ask[ed] my attorney that I didn't understand what was going on at the time and the judge let us talk it over but I didn't want to take 35 years[.] I thought he said [three to five] years not 35 and my attorney change[d] it to 39 years [and] said it was a[] mistake.

In opposition to defendant's motion to withdraw his plea, the People directed the trial court to the approximately 20 previous hearings at which no request had been made for the assistance of an interpreter and submitted transcripts of defendant's jail calls with his aunt and his grandfather on November 27. The transcript of the call with his aunt reads in relevant part as follows:

> [AUNT:] So, uh, so your option was life without parole or these thirty-five years and that mean b[****] wouldn't come down off the, off the, uh, time, [your attorney] said.

> [DEFENDANT:] Yeah, so right now, um, right now, uh, he added eighty-five percent in there. How many years he told you, twenty-nine?

> [AUNT:] He told me twenty-nine.

7

[DEFENDANT:] Yeah cuz he added the eight-five percent in there. So … [¶] … [¶] … and like I told [my attorney], you know, what would you do? I made everybody get out of the room before we started and he was like, 'Man, you got two choices. You either thirty-five, or you take life without parole. With no years. She's offering you no years, life without parole.' "

The transcript of the call between defendant and his grandfather reads in relevant part as follows:

[DEFENDANT:] I took the deal for thirty-five.

[GRANDFATHER:] [Yelling] Nooo, man, you didn't take no deal for thirty-five! Why Steven why would you? Steven?

[DEFENDANT:] Yeah.

[GRANDFATHER:] Why would you take the deal? Why didn't you wait?

[DEFENDANT:] It wasn't … it was only two choice she left on the table. You take the thirty-five or you get life without parole. [¶] … [¶]… I need you to call [my attorney]. I need you to call [my attorney] and tell him I want to take that deal off the table. I ain't feel like—

[GRANDFATHER:] Okay.

[DEFENDANT:] I got thirty days … he said I got thirty days right?

[GRANDFATHER:] That's what he told you?

[DEFENDANT:] Yeah, I got thirty days so … I just thought about everything right now … uh-uh. That, that will, no … I don't want that. I … rather go through trial. Cause he said he got enough proof to show that she's a liar, she's conniving and all the sh[**] that she was doing. He got enough proof to prove that she was lyin'. The only thing we don't have proof is, is the DNA. I'm cool with that. Okay. But thirty-five, bro? Thirty-five? Shoot like—

[GRANDFATHER:] Yeah … yeah … well you got … yeah you shouldn't take that … okay this is what's gonna happen … they gotta … you gotta go back to court to accept the deal, didn't they tell you that?

[DEFENDANT:] That uh … January twenty-eighth I got that sentencing.

[GRANDFATHER:] Okay … okay well til then … at that time you tell them you no longer want to take that deal.

[DEFENDANT:] No, Pop, I need you to call [my attorney] and tell him … like now. Like I don't want … I don't want set what I did yesterday. [¶] … [¶]

[GRANDFATHER:] … Why … why …

[DEFENDANT:] So he's like well you're only lookin' at—he's like you're only lookin' at twenty-nine years, cause I get eighty five percent

and I'm like—

[GRANDFATHER:] Well why they, why they, what about wa[i]ving time? What about why, why didn't they wa[i]ve time?

[DEFENDANT:] I asked Pop. I did. I sat in that room for an hour and a half. Telling [my attorney] … you know let's try ten years … [the prosecutor] didn't go for ten … she didn't go for fifteen. She didn't even go for thirty. She was like thirty-five is the minimum. That's what I'm takin', thirty-five. If we proceed with this today …

[GRANDFATHER:] No.

[DEFENDANT:] … it's gonna be life without parole, if we proceed. Like she was pushing that issue, so we sat there for a hour and a half … trying everything we can. I talked to him about everything you told me— [¶] … [¶]

[GRANDFATHER:] … you know you shouldn'ta took that sh[**]. You shoulda told him man I'm not, I'm not ready to go to j— What did they say about goin' to trial, they talkin' about they gonna give you … they can't automatically give you sh[**]. You gotta go to trial. They gotta have witnesses.

[DEFENDANT:] I know. I f[***]ed up. [¶] … [¶]

Well [the trial court] said … well right now what they told me yesterday was, probation gonna come see me, and, probation, uh, gonna ask me a couple of questions and stuff and they're gonna go to the judge, and the judge is goin' to decide if he rather give me less sentence or if … if he gonna accept the thirty-five and stuff. Or if he don't feel like this is not adding up he can give me less sentencing. He can give me less time, but that's up to the judge. But the judge said … he told me in my face, he said, 'I don't know about this case. The DA and your lawyer know more about it then I do but I'm gonna have to go over everything and then I can decide if I want to reject it or accept it.' But that's after … that's after probation come see me.

On February 28, 2020, the trial court and defendant engaged in the following colloquy:

THE COURT: I hear mention of an interpreter. [Defendant] what type of interpreter are you asking for?

DEFENDANT: ASL.

THE COURT: [Defendant], why do you need a sign language interpreter? You hear everything I'm saying.

DEFENDANT: I don't understand it.

THE COURT: Can you hear it?

DEFENDANT: Somewhat. I miss things sometimes.

9

THE COURT: You've never—in the entire history of this case you've never asked for a sign language interpreter.

DEFENDANT: Yes, I have.

THE COURT: So you can't hear what I'm saying now.

DEFENDANT: I can understand some things you are saying right now. I always had one when I was in high school, middle school—I always had an interpreter. So I don't understand what's the problem with me having one now. [¶] … [¶] I need an interpreter in case I miss anything. I need an ASL interpreter. I understand ASL completely.

THE COURT: I'll have an interpreter present at the next hearing to make sure that's needed."

On June 2, 2020, the trial court held a hearing on defendant's motion to withdraw his pleas. At the end of that hearing, the trial court concluded there was "no good cause or reason to believe that this plea was entered unknowingly, unintentionally, unwillingly, or through any force at all." The court concluded the true reason defendant sought to withdraw his pleas was "buyer's remorse, which is not good cause." For those reasons, the motion to withdraw the pleas was denied.

(Doc. 12-1 at 381-387).

## V.   ANALYSIS

### A.   Ground 1

In Gound 1, Petitioner assigns blame to the trial court for proceeding without an ASL interpreter present for him because he is hearing impaired, which violates his constitutional rights. (Doc. 1 at 3).  This claim is deemed exhausted to the extent Petitioner raised it on direct appeal to the Fifth Appellate District Court, which denied it on the merits, and subsequently raised and summarily denied by the California Supreme Court.  In considering Ground 1, this federal habeas court looks through to the Fifth Appellate District's reasoned decision in evaluating the claim under the deferential standard of review. *Wilson*, 138 S. Ct. at 1192.

#### 1. State Court Decision

The appellate court denied Petitioner's claim as follows:

Defendant argues the trial court erred in denying his motion to withdraw his no contest pleas. Specifically, he contends that the trial court "ignored the evidence of [defendant's] hearing impairment and his constitutional right to an interpreter to aid in his understanding of the serious proceedings the state had lodged against him." We disagree. The absence of a sign language interpreter did not result in defendant being unable to understand the plea such that it was

10

entered by mistake, ignorance, or any other factor overcoming the free exercise of judgment.

Any time before judgment is entered, a trial court may permit a defendant to withdraw his guilty or no contest plea based upon a showing of good cause. (§ 1018.) Section 1018 provides that it "shall be liberally construed" to achieve its "objects and to promote justice." For purposes of section 1018, " ' "[g]ood cause" [to withdraw a plea] means mistake, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment and must be shown by clear and convincing evidence.' [Citation.] A defendant seeking to withdraw a plea based on the failure to advise on the direct consequences of a conviction must show actual ignorance of those consequences." (People v. Dillard (2017) 8 Cal.App.5th 657, 665.) "[G]ood cause does not include mere ' "buyer's remorse" ' regarding a plea deal …." (People v. Simmons (2015) 233 Cal.App.4th 1458, 1466 [collecting cases].)

We review the denial of a motion to withdraw a plea for an abuse of discretion. (People v. Patterson (2017) 2 Cal.5th 885, 894.)

Here, the trial court concluded that defendant understood the consequences of his plea prior to entering into the plea. The record supports the trial court's conclusion. Defendant signed the written plea agreement that set out the maximum term of confinement and separately calculated the stipulated term for each count of conviction. Defendant has not attempted to explain how his hearing impairment could have affected his understanding of the written plea agreement. Next, during the change of plea colloquy, defendant was asked if he understood the terms of the plea. Defendant said that he did and stopped to ask his counsel a question regarding the trial court's comment that the offenses constituted violent strikes. The court then again asked defendant if he had any questions and defendant responded that he did not.

Further, during defendant's recorded conversation with his aunt the morning after the plea, defendant explained that prior to the plea his attorney told him that he had two choices—accept a 35-year term or face a term of life without parole. He explained to his aunt that he would only serve 85 percent of the time or 29 years. Similarly, defendant told his grandfather that he sat with his attorney for an hour and a half, requesting a 10-year term, a 15-year term, and a 30-year term, but the prosecutor rejected anything less than 35 years. Defendant then agreed with his grandfather that he made a poor choice in accepting the plea agreement. Finally, defendant explained to his grandfather the stipulated sentence process that the trial court explained to him the preceding day— belying any argument that he did not understand the proceedings.

Based on that record, we cannot conclude that the trial court abused its discretion in concluding that defendant's plea was knowingly and voluntarily entered into with a full understanding of the likely term of imprisonment, and therefore that no good cause existed for defendant to withdraw his plea.

11

(Doc. 12-1 at 389).

### 2. Federal Analysis

Petitioner wholly fails to engage with the state court's analysis and rejection of this claim or to present any argument as to why the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent or based on an unreasonable determination of the facts.  (*See generally* Doc. 1).  Rather, Petitioner cites to *People v. Aguayo*, 13 Cal. 5th 974, 515 P.3d 63 (2022), *People v. Vargas*, 59 Cal. 4th 635, 328 P.3d 1020 (2014), and *People v. Vasquez*, 63 Cal. App. 5th 107, 277 Cal. Rptr. 3d 473 (2021) in support of  this claim.  (*Id.)*.  Respondent argues the state court decided the issue based solely on state constitutional and statutory law, so "relief is categorically barred."  (Doc. 13 at 4).  Alternatively, Respondent argues the claim is meritless.  (*Id*. at 5).

Initially, the cases relief upon by Petitioner are inapposite.  *Aguayo* addresses if a defendant can be convicted of both assault with a deadly weapon and force likely to produce great bodily injury.  *People v. Aguayo*, 13 Cal. 5th 974, 515 P.3d 63 (2022).  *Vargas* addresses whether two prior convictions arising out of a single act against a single victim could constitute two strikes under California's Three Strikes Law.  *People v. Vargas*, 59 Cal. 4th 635, 328 P.3d 1020 (2014).  Finally, *Vasquez*, involves circumstances when the trial court does not instruct the jury on a lesser included offense to statutory rape.  *People v. Vasquez*, 63 Cal. App. 5th 107, 277 Cal. Rptr. 3d 473 (2021).

To the extent Petitioner claims that the trial court abused its discretion in denying his request to withdraw his plea, such a claim is an issue of state law and is not proper for federal habeas review.  *Rodriguez v. Madden*, 2023 WL 3571374, at *10 (E.D. Cal. May 19, 2023) (citing *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996)), *report and recommendation adopted*, 2023 WL 5515899 (E.D. Cal. Aug. 25, 2023).  "The habeas statute 'unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (internal citations omitted).  Thus, "'it is not the province of a federal habeas court to reexamine state-court determinations on state-law

12

questions.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (internal citations omitted); *Swarthout*, 562 U.S. at 219 ("[F]ederal habeas corpus relief does not lie for errors of state law."). Rather, a federal habeas court is bound by the state court's determination concerning the provisions of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")).

Nor can Petitioner show a federal right to an interpreter. "The United States Supreme Court has not held that there is a constitutional right to the assistance of an interpreter; rather, provision of an interpreter is generally within the trial court's discretion." *Landeros v. Dickerson*, 2016 WL 1128132, at *8 (C.D. Cal. Feb. 18, 2016) (citing *United States v. Si*, 333 F.3d 1041, 1043 n.3 (9th Cir. 2003) and *Perovich v. United States*, 205 U.S. 86, 91 (1907)). Further, the record reflects that at no time prior to the entry of his plea did Petitioner request an ASL interpreter, yet alone was denied an interpreter by the court when requested.

Nevertheless, the record demonstrates that the appellate court's affirmance of the trial court's denial of Petitioner's motion to withdraw his no contest plea was not contrary to federal law. Under California law, Petitioner's nolo contendere plea "shall be considered the same as a plea of guilty and . . . the court shall find the defendant guilty." Cal. Pen. Code § 1016. Petitioner must overcome the "well settled [general principle] that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). This is because a voluntary and intelligent plea forecloses federal habeas review of constitutional errors alleged to have occurred prior to the entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973). It also waives any claim of ineffective assistance of counsel that occurred prior to entry of the plea unless it is shown that counsel's faulty advice coerced the plea. To satisfy due process, the court must satisfy itself that the plea is made voluntarily, knowingly, and intelligently. *See Haring v. Prosise*, 462 U.S. 306, 319 (1983) (Since "a guilty plea is not simply 'an admission of past conduct,' but a waiver of constitutional trial rights such as the right to call witnesses, to confront and cross-examine one's accusers, and to trial by jury," the plea " 'not only must be voluntary but

must be [a] knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances and likely consequences.'" (quoting *Brady v. United States*, 397 U.S. 742, 747–48 (1970)).  Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The undersigned finds Petitioner's arguments are insufficient to overcome the strong presumption that his plea was both knowing and voluntary.  As found by the appellate court, prior to entering his plea, Petitioner executed a Felony Advisement of Rights, Waiver and Plea Form, which confirmed that he agreed to plead no contest to Counts 3, 12, and 18 for a total of 35 years. (Doc. 12-1 at 65-66) (showing sentence calculation for the three counts as "13+13+9 total 35 years CDC").  Thus, Petitioner's assertion that he thought he was pleading to 3-5 years instead of 35 years is disingenuous.  The Waiver included express advisements regarding the consequences of a plea, as well as listing Petitioner's constitutional rights, with Petitioner initialing next to each advisement.  (*Id.*).  During the plea colloquy the trial court advised Petitioner that the recommendation was a "35-year sentence," asked Petitioner if he had a chance to discuss the matter with his attorney, asked Petitioner if he read and reviewed and understood and then signed and initialed this change of plea form, and informed Petitioner that the maximum sentence that could be imposed for the charges he was pleading to is 39 years in state prison.  (*Id.* at 107-112, Exh. A).  The court further stopped and asked Petitioner when he was whispering with his attorney if he has any further questions of the court.  (*Id.* at 113).  To which Petitioner stated he did not.  (*Id.*).  Further, when Petitioner plead no contest the judge stated "And you understand I'm going to accept each of your no contest pleas. And I will use those no contest pleas to make a finding of guilt?"  (*Id.* at 114).  The trial court again asked Petitioner if he had anything else, any concerns or other questions for the court, to which Petitioner responded no.  (*Id.* at 115).  Thus, the trial court accepted Petitioner's no contest plea, and found the waiver was knowing, intelligent and voluntary.  (*Id.*).  Further, in denying the motion to withdraw his plea, the state court took

judicial notice of the 20-minute orders for the 20 hearings prior to the change of plea where Petitioner did not request nor utilize a sign language interpreter. (*Id.* at 282). The court further found that the phone calls where Petitioner discussed the plea deal showed he knowingly and voluntarily pled and was further evidence of Petitioner's knowledge of the 35 year sentence. (*Id.*).

After careful review of the record, considering the Waiver, Petitioner's statements in response to the trial court, and his telephone conversations, there is no indicia that Petitioner's plea was not knowing and voluntary because he lacked an ASL interpreter. Instead, as found by the state appellate court, Petitioner understood the ramifications of his plea but later changed his mind. As such, the state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor an unreasonable determination of the facts. The undersigned recommends that Ground 1 be denied.

**B.    Ground 2**

As Ground 2, Petitioner cites *Ali v. City of Newark*, No. CV 15-8374 (JLL), 2019 WL 1326888 (D.N.J. Mar. 25, 2019). (Doc. 1 at 4). Petitioner submits *Ali* stands for the proposition that when a sign language interpreter is not present during a hearing, a case must be dismissed. (Doc. 1 at 4). Petitioner then lists, without elaboration or discussion, the following federal statutes and amendments: Title II of the American With Disabilities Act ("ADA"), Section 504 Rehabilitation Act, the Fourteenth Amendment, the Eighth Amendment, and the Fifth Amendment. (*Id.*).

At the outset, *Ali* does not qualify as clearly established federal law. Regardless, it does not stand for the proposition Petitioner suggests. *Ali* involved a civil action seeking injunctive relief and damages for emotional suffering stemming from the failure of an ASL interpreter to appear at plaintiff's traffic ticket case in New Jersey municipal court, despite plaintiff twice requesting an ASL interpreter using Relay Service, a text-based service provided by Sprint.

Further, Petitioner fails to explain how his plea-based conviction implicates either of the federal statutes or listed amendments. The Court need not further analyze Ground 2 because Petitioner did not raise a claim asserting violations of either federal statute or the Fourteenth,

15

Eighth, or Fifth Amendments to the state courts. A petitioner in state custody who wishes to proceed on a federal petition for a writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). Exhaustion is a "threshold" matter that must be satisfied before the court can consider the merits of each claim. *Day v. McDonough*, 547 U.S. 198, 205 (2006). The exhaustion doctrine is not a jurisdictional issue but is based on comity to permit the state court the initial opportunity to resolve any alleged constitutional deprivations. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509, 518 (1982). To satisfy the exhaustion requirement, petitioner must provide the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Duncan v. Henry*, 513 U.S. 364, 365 (1995). Exhaustion is determined on a claim-by-claim basis. *Insyxieng-May v. Morgan*, 403 F.3d 657, 667 (9th Cir. 2005). And the burden of proving exhaustion rests with the petitioner. *Darr v. Burford*, 339 U.S. 200, 218 (1950) (overruled in part on other grounds by *Fay v. Noia*, 372 U.S. 391 (1963)). A failure to exhaust may only be excused where the petitioner shows that "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)-(ii); *see also Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (directing that exhaustion should be excused only "in rare cases where exceptional circumstances of peculiar urgency are shown to exist."); *Ducksworth v. Serrano*, 454 U.S. 1, 3 (1981) ("An exception is made only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief.").

Thus, Petitioner was required to present the substance of *each individual claim* to the state courts, "including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief." *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013). Because nothing before the Court indicates Petitioner presented the claims in Ground 2 to the state courts, and Petitioner otherwise does not show any reason to excuse exhaustion, these claims are unexhausted and must be dismissed.

////

16

## VI.   CERTIFICATE OF APPEALABILITY

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Petitioner has not made a substantial showing of the denial of a constitutional right, the undersigned recommends that the court decline to issue a certificate of appealability.

Accordingly, it is **RECOMMENDED**:

1. Petitioner be DENIED any relief on his Petition for Writ of Habeas Corpus (Doc. 1); and

2. Petitioner be denied a certificate of appealability.

### NOTICE TO PARTIES

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id*.; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by

17

the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).  These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  ***Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.***

Dated:     March 10, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

18